Earl RICE, Appellant

v.

The STATE of Texas, Appellee.

Nos. 05–05–00951–CR, 05–05–00952–CR.

Court of Appeals of Texas,
Dallas.

July 7, 2006.

Dennis P. Jones, Kaufman, for appellant.

Ed Walton, Criminal District Attorney, Christian T. Souza, Assistant Criminal District Attorney, Kaufman, for the State.

Before Justices WHITTINGTON, BRIDGES, and RICHTER.

## OPINION

Opinion by Justice WHITTINGTON.

Earl Rice appeals his convictions for possession of 400 grams or more of cocaine and impersonating a public servant. After finding appellant guilty, the jury assessed punishment, enhanced by two prior felony offenses, at ninety years' confinement and twenty-seven years' confinement, respectively. In two issues, appellant contends the trial judge erred in denying his motion for a directed verdict and denying his motion to suppress evidence. In a third issue, he claims the evidence is legally insufficient to support his conviction for possession of cocaine. We affirm the trial court's judgments.

### Background

On September 26, 2003, Officer Devin Gonzales, a state trooper with the Texas Department of Public Safety, was patrolling Interstate Highway 20 in Kaufman County when he saw a vehicle that appeared to be an unmarked Crown Victoria police car. The windows were darkly tinted, and the car had a Louisiana license plate. Officer Gonzales tried running the license plate number through the system, but the plates appeared to be unregistered. He then decided to pull the vehicle over.

After both cars pulled to a stop, the driver of the car, later identified as appel-

lant, got out of the Crown Victoria and approached Officer Gonzales. Appellant told the officer he worked for the department of corrections and had been to Texas to pick up a prisoner. Appellant was wearing a department of corrections uniform with a patch that read "State of Louisiana." As appellant continued talking, Officer Gonzales became suspicious and told appellant he was going to contact the Louisiana Department of Corrections. Appellant then changed his story, telling the officer he had driven from Louisiana to Dallas in a department of corrections vehicle to visit his sister. Sensing that something was not right, Officer Gonzales called for backup. After additional officers arrived, Officer Gonzales asked appellant if he could search the car. Appellant consented. In the trunk of the car, Officer Gonzales discovered a bag containing over 500 grams of cocaine. Appellant was arrested and charged with possession of 400 grams or more of cocaine and impersonating a public servant. After he was convicted of both offenses, appellant filed these appeals.

### Sufficiency of the Evidence

■ In his first point of error, appellant claims the trial judge erred in denying his motion for a directed verdict in the impersonating a public servant charge. In his third point of error, he claims the evidence is legally insufficient to support his conviction for possession of 400 grams or more of cocaine. We disagree with both contentions.

■ A challenge to the denial of a motion for a directed verdict is essentially a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App.1996); *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim.App.1993). When reviewing challenges to the legal sufficiency of the evidence, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Garcia v. State*, 57 S.W.3d 436, 441 (Tex.Crim.App.2001). We view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex.Crim.App.2005); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim. App.2004), *cert. denied*, 544 U.S. 950, 125 S.Ct. 1697, 161 L.Ed.2d 528 (2005); *Simmons v. State*, 109 S.W.3d 469, 472 (Tex. Crim.App.2003). The jury, as sole judge of the witnesses' credibility and the weight to be given their testimony, is free to accept or reject any or all of the evidence presented by either side. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim. App.2000); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000).

■ A person commits an offense if he knowingly or intentionally possesses 400 grams or more of cocaine. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(a), (f) (Vernon 2003 & Supp.2005). To support a conviction for unlawful possession of 400 grams or more of cocaine, the State must prove the accused (i) exercised actual care, custody, control, or management over the contraband and (ii) knew the matter was contraband. *See Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988); *Porter v. State*, 873 S.W.2d 729, 734 (Tex.App.-Dallas 1994, pet. ref'd). When the accused is not in exclusive control or possession of the place where the contraband is found, he cannot be charged with knowledge and control over the contraband unless there are additional independent facts and circumstances affirmatively linking him to the contraband in such a manner and to such an extent that a reasonable inference

may arise that the accused knew of the contraband's existence and that he exercised control over it. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App.2005); *Porter*, 873 S.W.2d at 732; *see Brown v. State*, 911 S.W.2d 744, 748 (Tex.Crim.App. 1995). To determine whether sufficient affirmative links exist, we examine circumstantial factors such as whether (i) appellant was present when the drugs were found, (ii) the amount of drugs was significant, (iii) appellant was in close proximity to the contraband, (iv) appellant was the driver of the car in which contraband was found, and (v) the drugs were found in an enclosed place. *See Bates v. State*, 155 S.W.3d 212, 216–17 (Tex.App.-Dallas 2004, no pet.); *Taylor v. State*, 106 S.W.3d 827, 831 (Tex.App.-Dallas 2003, no pet.); *Porter*, 873 S.W.2d at 733; *Frierson v. State*, 839 S.W.2d 841, 849 (Tex.App.-Dallas 1992, pet. ref'd); *Brown v. State*, 878 S.W.2d 695, 700 (Tex.App.-Fort Worth 1994), *aff'd*, 911 S.W.2d 744 (Tex.Crim.App.1995).

Although appellant claims the evidence is legally insufficient to support his conviction for possession of 400 grams or more of cocaine, we cannot agree. Officer Gonzales testified he stopped appellant because the car appellant was driving had a license plate number that was not registered. Appellant immediately approached the patrol car, something that troubled the officer. Appellant identified himself as an employee of the department of corrections. He was wearing a department of corrections uniform with a patch that read "State of Louisiana," a Chicago White Sox baseball cap, and tennis shoes. Officer Gonzales was suspicious because the uniform was too short for appellant and he was wearing a hat and shoes that were not commonly worn by state officials. Appellant told the officer he had driven to Texas to pick up a prisoner. Because appellant

had no paperwork or identification linking him to the department of corrections, Officer Gonzales became more suspicious and decided to call the Louisiana Department of Corrections. Appellant then changed his story, telling the officer he had taken the car in order to visit his sister in Dallas.

In light of the suspicious circumstances, Officer Gonzales called for backup. When backup officers arrived, he then asked appellant if he could "search the vehicle and all of the contents." Appellant gave permission for him to do so. Officer Gonzales searched the interior of the passenger compartment, finding two hard license plates. He then searched the trunk where he discovered a black duffel bag with clothing and personal items inside. At the bottom, the officer found a black velvet bag. When he touched the bag, he could tell it contained a soft powdery substance. Officer Gonzales took the bag out and looked inside. He knew from his experience as a law enforcement officer that the bag contained either "crack cocaine or cocaine." He arrested appellant and read him his *Miranda*[1] rights.

Officer Gonzales testified he had care, custody, and control of the bag until it was sent to the Garland narcotics laboratory for analysis. The State introduced the laboratory analysis that stated the bag contained 500.11 grams of cocaine and that the cocaine was 80 percent pure.

Viewed in the light most favorable to the judgment, the evidence shows appellant was the sole occupant and driver of the car that was stopped in Kaufman County by Officer Gonzales. After appellant agreed to allow the officer to search the "vehicle and all of its contents," Officer Gonzales discovered a bag containing what was later determined to be approximately 500 grams of 80 percent pure cocaine. Therefore, the

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

evidence establishes appellant was present when illegal drugs were found in the trunk of the car, appellant was the sole occupant of the car and was driving the car in which the drugs were found, and the amount of drugs found was significant. From these facts, we conclude a rational jury could infer appellant knowingly or intentionally possessed 400 grams or more of cocaine. After viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support appellant's conviction for possession of 400 grams or more of cocaine. We overrule appellant's third point of error.

In his first point of error, appellant claims the trial judge erred in denying his motion for a directed verdict in the impersonating a public servant charge. Appellant concedes he held himself out as "an official of the State of Louisiana" but argues that the Texas Penal Code statute prohibiting such conduct applies only when a person represents he is an official of the State of Texas. We disagree.

A person commits an offense if he "impersonates a public servant with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts." TEX. PEN.CODE ANN. § 37.11(a)(1) (Vernon 2003). A public servant is "an officer, employee, or agent of government." TEX. PEN.CODE ANN. § 1.07(a)(41)(A) (Vernon Supp.2005). "Government" means "the state." TEX. PEN.CODE ANN. § 1.07(a)(24)(A).

The penal code does not define the phrase "the state"; therefore, we interpret this statute by seeking "to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim.App.1991). If the "meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning." Boykin, 818 S.W.2d at 785. In other words, we "interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results." Jordan v. State, 36 S.W.3d 871, 873 (Tex.Crim. App.2001). "State" is defined as "a body politic organized for civil rule and government," a "political organization that has supreme civil authority and political power and serves as the basis of government," or "any of the bodies politic or political units that together make up a federal union, as in the United States of America." See WEBSTER'S COLLEGE DICTIONARY 1306 (1991); WEBSTER'S 3D NEW INT'L DICTIONARY 2228 (1981). Thus, a person commits an offense if he impersonates an officer, employee, or agent of a political body, organization, or unit organized for civil rule and government. See TEX. PEN.CODE ANN. §§ 1.07(a)(24)(A), (41)(A), 37.11(a)(1). In this case, appellant concedes he represented to Officer Gonzales that he was a State of Louisiana department of corrections employee in Texas for the purpose of retrieving a prisoner. Under these facts and circumstances, we conclude the evidence is legally sufficient to support his conviction for impersonating an officer.

In reaching this conclusion, we note that one of the principle objectives of the penal code is to insure the safety of the public generally. See TEX. PEN.CODE ANN. § 1.02 (Vernon 2003). When section 37.11 of the penal code is read with this in mind, the purpose of this section is clear—the general public should not be placed at risk of submitting to the pretended authority of an individual impersonating an agent of a "government unit," regardless of whether the individual is impersonating a Texas officer, employee, or agent or a Louisiana officer, employee, or agent. Furthermore,

to interpret this section as appellant suggests would lead to absurd consequences. *See Boykin,* 818 S.W.2d at 786.

We conclude section 37.11 is not limited to only those persons impersonating officers, employees, or agents of the State of Texas, but includes persons impersonating officers, employees, or agents of other states. Because appellant concedes he impersonated an official of the department of corrections for the State of Louisiana, the trial judge did not err in denying his motion for a directed verdict. We overrule appellant's first point of error.

### Motion to Suppress

In his second point of error, appellant contends the trial judge erred in denying his motion to suppress evidence. Under this point, appellant claims the "scope and degree of [Officer Gonzales's] search exceeded the bounds of consent and reason." For the reasons that follow, we disagree.

▮ Initially, we question whether appellant has preserved this issue for review. Before trial, appellant filed a written motion to suppress the contraband found in the trunk of the car on the grounds that the search was "effected without valid warrant, or probable cause, or reasonable suspicion." During a pretrial hearing on the motion to suppress, appellant argued there were no "exigent circumstances" preventing Officer Gonzales from getting a warrant and that the items found during the search could not be tied to appellant because it "wasn't his vehicle." On appeal, appellant claims his consent to a search of the car was given at a time when the only violation he was suspected of committing was impersonating a public servant and, therefore, the search was "limited to evidence of that violation." Because appellant's complaint on appeal does not comport with his complaint below, we conclude he has waived this issue on appeal. *See*

*Niehouse v. State,* 761 S.W.2d 491, 494 (Tex.App.-Dallas 1988, no pet.) (appellant failed to preserve error because claim was not asserted in trial court); *Jeffley v. State,* 38 S.W.3d 847, 861 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (waiving appellate review on denial of motion to suppress because appellant's complaint on appeal did not comport with objections below).

▮ Even assuming appellant did not waive this point, we would nevertheless conclude the trial judge did not err in denying the motion to suppress evidence. In a motion to suppress hearing, the trial judge is the sole trier of fact and judge of witness credibility and may believe or disbelieve all or part of a witness's testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). We review a trial judge's ruling on a motion to suppress for abuse of discretion, giving almost total deference to the trial judge's determination of historical facts, but review search and seizure law de novo. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App.2002); *Garcia v. State,* 15 S.W.3d 533, 535 (Tex.Crim.App.2000). Thus, if the issue involves the credibility of a witness, making the evaluation of that witness's demeanor important, we defer to the trial judge's application of law to the facts. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *State v. Terrazas,* 4 S.W.3d 720, 725 (Tex.Crim.App. 1999); *see Guzman v. State,* 955 S.W.2d 85, 87–89 (Tex.Crim.App.1997). Absent an abuse of discretion, we may not disturb the trial judge's findings. *See Guardiola v. State,* 20 S.W.3d 216, 223 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (citing *Penry v. State,* 903 S.W.2d 715, 744 (Tex. Crim.App.1995)). In reviewing a trial judge's ruling on a suppression motion, we must view the record and all reasonable inferences therefrom in the light most favorable to the ruling and sustain the ruling

if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *Knisley v. State,* 81 S.W.3d 478, 483 (Tex. App.-Dallas 2002, pet. ref'd).

 Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued upon probable cause is "per se unreasonable ... subject only to ... specifically established and well-delineated exceptions." *Rayford v. State,* 125 S.W.3d 521, 528 (Tex.Crim.App.2003) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), *cert. denied,* 543 U.S. 823, 125 S.Ct. 39, 160 L.Ed.2d 35 (2004). A search conducted with the consent of the suspect is one such exception as long as the consent is voluntary. *Rayford,* 125 S.W.3d at 528. The validity of a consent to search is a question of fact to be determined from all the circumstances. *Rayford,* 125 S.W.3d at 528. Because appellant challenges the search under the federal constitution, the State must prove the validity of a consent to search by a preponderance of the evidence. *Rayford,* 125 S.W.3d at 528 (citing *Ohio v. Robinette,* 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) and *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App. 2002)).

In this case, Officer Gonzales testified he noticed the car appellant was driving because it appeared to be an undercover police car with very darkly tinted windows. He stopped appellant because the car had a license plate number that was not registered. Appellant immediately approached the patrol car, another aspect which troubled the officer. Appellant identified himself as an employee of the department of corrections. He was wearing a department of corrections uniform with a patch that read "State of Louisiana." Addition-

ally, appellant wore a Chicago White Sox baseball cap and tennis shoes. Officer Gonzales noted the uniform did not properly fit appellant and that the baseball cap and shoes were not generally considered proper attire for officers. Appellant told the officer he had driven to Texas to pick up a prisoner but that the prisoner had been transferred. Because appellant did not have any paperwork or identification linking him to the department of corrections, Officer Gonzales became suspicious and told appellant he was going to call the Louisiana Department of Corrections. Appellant changed his story, telling the officer he had used the car to visit his sister in Dallas. Officer Gonzales did not believe that story either and called for backup.

When another officer arrived on the scene, Officer Gonzales asked appellant if he could "search the vehicle and all of the contents." Appellant gave him permission to do so. Officer Gonzales searched the interior of the passenger compartment, then the trunk. In the trunk, he discovered a black duffel bag with clothing, personal items, and a black velvet bag containing a large amount of a soft powdery substance which was later established to be over 500 grams of 80 percent pure cocaine.

Viewing the circumstances as a whole and giving deference to the trial judge's findings, we conclude the State showed by a preponderance of the evidence that appellant's consent to search the vehicle and its contents was voluntary. The trial judge did not err in denying appellant's motion to suppress. We overrule appellant's second point of error.

We affirm the trial court's judgments.